2018R000036/ADL/CD/KD

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 19-395 |
| | : | |
| YOUNG JIN SON | : | 18 U.S.C. § 1344 |
| a/k/a "Joshua Son" | : | 18 U.S.C. § 1343 |
| | : | 18 U.S.C. § 2 |
| Defendant | : | |
| | : | |

## INFORMATION

The defendant having waived in open court prosecution by indictment, the United States Attorney for the District of New Jersey charges:

### Relevant Individuals and Entities

1.  At all times relevant to this Information:

    a. Defendant YOUNG JIN SON, a/k/a "Joshua Son" ("SON") was a real estate broker who participated in the sale of multiple properties located in the State of New Jersey through fraudulent short sales, which were purchased in the names of others and then sold thereafter at a substantial profit (the "Short Sale Properties").

    b. Victim Bank 1 was a federally regulated national banking association, the accounts of which were then insured by the Federal Deposit Insurance Corporation, making it a "financial institution" as that term is defined in Title 18, United States Code, Section 20. Victim Bank 1 held liens on various Short Sale Properties.

## The Short Sale Process

2.  A "short sale" typically referred to situations in which a house owner obtained a mortgage loan from a lender to buy or refinance a house, could not make the loan payments owed, sought to end those payments by selling the house for less than the outstanding mortgage loan amount, and asked the lender to accept the reduced sales price of the house in full satisfaction of the mortgage loan. Such transactions were called "short sales" because the actual market value of the house (and, therefore, the price at which the house owner could sell it on the open market) was less than the amount owed by the house owner to the lender. By cancelling the loan for less than the loan amount still owed, the lender accepted a "short" payment amount from the house owner.

3.  Because the lenders have the legal right to collect the full loan amount, a short sale (and resulting cancellation of the mortgage loan) required the lender's approval.

4.  As part of the sale approval process, lenders typically required house owners and their agents to document the house owner's financial hardship and inability to continue making loan payments, as well as the actual fair market value at which the house could then be sold. To accomplish this, house owners were required to document their finances, and affirm that the proposed short sale was an "arm's-length" transaction; that is, one in which there was no undisclosed relationship between the house owner selling the home and the person or entity buying it from the house owner (other than the

short sale itself). Lenders also often required house owners to affirm that there were no side agreements with other parties that were unknown to the lender.

5. Before approving a short sale, lenders also typically required the house owner to engage a realtor to market the property through a multiple listing service ("MLS") to ensure that the residence was sold for actual market value so that the lender's losses on the short sale were minimized.

6. In addition, when selling their houses, house owners were required to sign HUD-1 Settlement Statements. A HUD-1 Settlement Statement was a standardized form used for residential real estate transactions that itemized the receipt and disbursement of funds to a buyer and seller. At closing, the buyer, house owner seller, and settlement agent certified that the information contained in the HUD-1 Settlement Statement was true and correct. Lenders and their servicers relied on the HUD-1 Settlement Statement when approving a short sale.

7. The documentation, affirmations, and information described in paragraphs 4, 5, and 6, above, were material to lenders' short sale approval decisions.

## The Fraudulent Scheme

8. Between in or about April 2012 and in or about August 31 2017, defendant SON and others known and unknown, illegally obtained more than approximately $1,987,000 by fraudulently inducing multiple lenders (the "Victim Banks"), including Victim Bank 1, to approve short sales of Short Sale

Properties for amounts substantially below what those properties were then worth, in the manner and using the means detailed below.

### Goal of the Fraudulent Scheme

9. The goal of the fraudulent scheme was for SON and others ("Co-Schemers") to enrich themselves by fraudulently deceiving lenders in connection with Short Sale Properties.

### Manner and Means of the Fraudulent Scheme

10. It was a part of the scheme that defendant SON and one or more Co-Schemers identified multiple residential properties in New Jersey to be used as Short Sale Properties.

11. It was a further part of the scheme that defendant SON sold, and caused others to sell, Short Sale Properties.

12. It was a further part of the scheme that, without the knowledge or authorization of multiple lenders (including Victim Bank 1), defendant SON and one or more of his Co-Schemers:

> (a) caused materially false hardship letters and hardship affidavits purportedly signed by short sale sellers to be submitted to Victim Banks in connection with the Short Sale Properties. The purpose of these submissions was to mislead the Victim Banks about the ability of house owners to repay their loans;

(b) caused "straw buyers" to purchase Short Sale Properties to allow a Co-Schemer to secretly maintain control of those properties;

(c) Caused Victim Banks (including Victim Bank 1) to be misled about the actual value of the Short Sale Properties by:

    (i) damaging drywall, removing appliances, and otherwise negatively impacting the cosmetic appearance of the Short Sale Properties to lower their apparent value;

    (ii) preventing legitimate, higher offers to be made for Short Sale Properties, or when made, communicated to Victim Banks. This was done by (among other things) artificially limiting the time Short Sale Properties were listed on an MLS and misrepresenting to potential third party buyers that these properties were unavailable for sale;

    (iii) obtaining quit claim deeds from various house owners to prevent the purchase of those properties by third parties that were not Co-Schemers;

    (iv) concealing resales of Short Sale Properties for amounts significantly higher than Victim Banks

had been defrauded into believing the Short Sale Properties were worth. At times, those higher resale prices had been agreed to by a Co-Schemer and third party buyer even before the Victim Bank had relinquished control over a Short Sale Property;

(d) used false HUD-1 Settlement Statements to hide various side deals with, and other secret disbursements made to, a Co-Schemer in connection with the sales of the Short Sale Properties; and

(e) caused a portion of the profits fraudulently obtained through the resale of Short Sale Properties to be disbursed to one or more bank accounts and, at times, to be split among one or more Co-Schemers, including defendant SON, other house sellers, realtors and others.

13. It was further a part of the fraudulent scheme that defendant SON sent and received emails from various Co-Schemers pertaining to their illegal activities, and that a Co-Schemer maintained handwritten and computer-generated records detailing specific aspects of the fraud concerning particular Short Sale Properties.

## COUNT ONE
## (BANK FRAUD)

14. Paragraphs 1 through 13 of this Information are realleged and incorporated herein.

15. On or about July 17, 2014, in Bergen County, in the District of New Jersey and elsewhere, the defendant

YOUNG JIN SON
a/k/a "Joshua Son"

did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud Victim Bank 1, and to obtain monies, funds, credits, assets, or other property owned by, and under the custody or control of, Victim Bank 1, by means of materially false or fraudulent pretenses, representations and promises, that is, defendant SON misrepresented and caused to be misrepresented to Victim Bank 1 the actual resale value of the Short Sale Property located at 77 Lakeview Street, River Edge, New Jersey.

In violation of Title 18, United States Code, Sections 1344 (1) and (2) and Section 2.

## COUNT TWO
## (WIRE FRAUD AFFECTING A FINANCIAL INSTITUTION)

16. Paragraphs 1 through 13 of this Information are realleged and incorporated herein.

17. On or about October 16, 2012, in Bergen County, District of New Jersey and elsewhere, the defendant,

YOUNG JIN SON
a/k/a "Joshua Son"

having devised and intending to devise a scheme and artifice to defraud Victim Bank 1, and to obtain money or property from Victim Bank 1 by means of false and fraudulent pretenses, representations, or promises, knowingly caused to be transmitted by means of a wire communication in interstate and foreign commerce any writing, sign, signal, picture and sound for the purpose of executing such scheme and artifice; that is, an e-mail from defendant SON at ********7@gmail.com to a Co-Schemer referring to a property located at 114 Pershing Road, Englewood Cliffs, New Jersey.

In violation of Title 18, United States Code, Section 1343 and Section 2.

# FORFEITURE ALLEGATIONS

1. As the result of committing the offenses constituting a specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), as alleged in this Information, the defendant,

> YOUNG JIN SON
> a/k/a "Joshua Son"

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses charged in Counts One and Two of this Information, and all property traceable thereto, including but not limited to at least $250,000, but not more than $350,000.00 in United States currency.

## Substitute Assets Provision

2. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

                                                                   *Craig Carpenito*
Craig Carpenito
United States Attorney